**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES MARTIN, | CASE NO. CV F 07-1005 LJO SMS |
|        Plaintiff, | **SUMMARY JUDGMENT DECISION** |
| vs. | (Docs. 20-23,28.) |
| GENESCO, INC., | |
|        Defendant. | |
|                             / | |

**INTRODUCTION**

Defendant Genesco, Inc. ("Genesco") seeks summary judgment on plaintiff James Martin's ("Mr. Martin's") employment disability discrimination claim as lacking merit and supporting evidence.[1] Mr. Martin contends that factual issues as to Genesco's grounds to terminate his employment prevent summary judgment. This Court considered Genesco's summary judgment motion on the record[2] and VACATES the November 10, 2008 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS Genesco summary judgment.

---

[1]     Mr. Martin pursued employment breach of contract and age discrimination claims but in his opposition papers, agrees to "dismiss" and "drop" the claims. As such, this Court will address the merits of only Mr. Martin's disability discrimination claim.

[2]     This Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did not consider the argument, document, paper or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material and appropriate for summary judgment.

**BACKGROUND**

**Mr. Martin's Genesco Employment**

Genesco is a retailer and wholesaler of footwear and headwear and operates retail stores in the United States, including a Jarman shoe store in Modesto.  Mr. Martin began working for Genesco in October 1970 and worked at various Genesco shoe stores through 1986, when Mr. Martin took a break of several months.  Mr. Martin managed the Modesto Jarman store from 1987 to June 1, 2005, when he was terminated.

**Mr. Martin's Sales Performance**

Genesco notes that the most important measurement of a store manager is his/her "actual sales in comparison to his planned sales, accessory sales, hose sales, and multiple sales."  Genesco expects a store manager's personal and store sales to increase five to 10 percent annually.

During the last three years of his Genesco employment, Mr. Martin's personal and store sales decreased annually.  From 2002 to 2003,[3] Mr. Martin's store sales decreased 11.7 percent and his personal sales decreased 4.6 percent.  From 2003 to 2004, Mr. Martin's store sales decreased 13 percent and his personal sales decreased 26 percent.  As of June 2005, Mr. Martin's store sales were on pace to decrease nine percent but Mr. Martin notes that higher sales are generated in months after May.

Mr. Martin claims that his sales for fiscal year 2003 were "exceptional" and were acknowledged as "good" by Genesco Regional Manager Jamie Waggoner ("Mr. Waggoner").  Mr. Martin notes that his store's gross sales ranked number three among 20 district stores in fiscal year 2004 and ranked number four among 18 district stores in fiscal year 2005.  Mr. Martin claims he was number one in fiscal year 2005 for improved percentage of multiple sales.

Genesco required a store manager's personal sales to constitute 35 percent of total store sales.  Mr. Martin did not meet the requirement during the four years prior to his termination.

In May 2002, October 2002 and April 2003, Mr. Waggoner counseled Mr. Martin regarding his failure to meet Genesco expectations and specifically his low sales.  In April 2005, Mr. Waggoner counseled Mr. Martin for failure to meet his accessory, hose and multiple sales requirements and advised

---

[3]     Mr. Martin notes that Genesco operates on a February to January fiscal year ending January 31 of each year so that most sales arise in the calendar year preceding the fiscal year end.

1  Mr. Martin that he would be terminated if his performance did not improve.  Mr. Martin acknowledged

2  that he did not meet Genesco sales goals.

3  **Violation Of Genesco Policies And Procedures**

4  Genesco attributes Mr. Martin's performance to have failed to adhere to Genesco policies and

5  procedures for which Mr. Martin was counseled.

6  On October 14, 2002, Mr. Waggoner counseled Mr. Martin for violation of Genesco policy to

7  transfer merchandise from one store to another without authorization.

8  Genesco notes that store managers are required to submit staffing schedules to their Regional

9  Manager no less than two weeks in advance.  Mr. Martin admitted that he frequently failed to send

10  staffing schedules in advance and was counseled by Mr. Waggoner about this policy violation.  Mr.

11  Martin appears to claim that he complied with a pre-May 2004 policy which required schedules to be

12  submitted one day before the start of a work week.  Genesco further notes that store managers are

13  required to send stock counts to their Regional Manager and that Mr. Martin admitted to failure to send

14  in a stock count in 2004 and receiving counseling from Mr. Waggoner about this violation.

15  Genesco policy requires control of inventory within .40 percent of all sales.  A November 2004

16  audit of Mr. Martin's store revealed a .74 percent shortage in inventory.  Mr. Waggoner formally

17  counseled Mr. Martin on his inventory shortage on November 30, 2004.

18  Genesco's Personnel Hours Policy ("hours policy") requires a store manager to:

19  1.  Close the store two nights per week of which one of those nights be a Friday or Saturday

20  (busiest sales nights);

21  2.  Work every other Sunday; and

22  3.  Work at least 45 hours per week.

23  Genesco characterizes these requirements as "strictly enforced."

24  Genesco points to Mr. Martin's time records[4] to demonstrate that he did not meet the hours

25  policy requirements in that he failed to:

26  1.  Close the store on a Friday or Saturday on seven weeks during January 19, 2005 to May

27

28  [4]  Genesco notes Mr. Martin's agreement that the time records accurately reflect days and hours worked.

28, 2005;

2.      Work every other Sunday from December 28, 2003 to May 28, 2005, missing entire months of Sundays and two consecutive Sundays during the December rush and working only six of 18 Sundays from January 23, 2005 to his termination and missing six consecutive Sundays;[5] and

3.      Work at least 45 hours per week.[6]

Genesco notes that Mr. Waggoner counseled Mr. Martin orally and in writing on several occasions about these deficiencies.  In his deposition, Mr. Martin concedes that he could have closed on Friday or Saturday and worked every other Sunday without exceeding 45 hours a week.

Genesco attributes Mr. Martin to have failed to teach and enforce sales procedures to his sales people.  During a personal visit to the Modesto store, Mr. Waggoner observed a salesperson complete a sale without offering to show the customer accessories and encouraging to buy multiple pairs of shoes.  In his deposition, Mr. Martin acknowledged that properly trained salespeople attempt to make multiple sales and that Mr. Waggoner counseled him for not effectively teaching and enforcing sales procedures.

### **Mr. Martin's Knee Surgery**

In August 2001, Mr. Martin suffered a knee injury but did not seek medical treatment until 2003.[7] Mr. Martin did not inform Genesco of his knee injury until his May 4, 2004 surgery.

On June 30, 2004, Gary Watson M.D., ("Dr. Watson"), Mr. Martin's treating physician, cleared Mr. Martin to return to a six-hour day and 32-hour per week schedule with no kneeling, squatting, climbing or prolonged walking/standing.  Genesco allowed Mr. Martin to work a modified schedule of less than 40 hours per week from June 5, 2004 to August 14, 2004.

On September 22, 2004, Dr. Watson cleared Mr. Martin to work with limitations of eight hours per day, 40 hours per week and no repetitive climbing.  Genesco authorized Mr. Martin's schedule with

---

[5]    Mr. Martin worked only 13 of 70 Sundays during December 28, 2003 to May 28, 2005.

[6]    Mr. Martin worked more than 45 hours per week in 11 of 19 weeks during January 19, 2005 to May 28, 2005.

[7]    Mr. Martin claims he sought medical attention within a week of his knee injury but provides no supporting evidence that he did so.

4

1  such limitations.  Mr. Martin was never disciplined for working a reduced schedule although Mr. Martin

2  attributes Mr. Waggoner to have told him by telephone that Mr. Waggoner expected Mr. Martin to work

3  "as many hours has you can.  You should be working 45."

4       As of January 19, 2005, Dr. Watson cleared Mr. Martin to return to "full duty . . . with no

5  limitations or restrictions."  Stephen Berrien, M.D. ("Dr. Berrien"), a qualified medical examiner who

6  examined Mr. Martin in connection with his workers compensation claim, supported Dr. Watson's

7  conclusion that Mr. Martin was capable to return to full duty with no limitations as of January 19, 2005.

8  Dr. Berrien noted in his April 11, 2005 report that "[t]here appears to be no evidence of any underlying

9  medical condition with regard to his knee."

10       **Suspected Falsified Time Records And Events Preceding Mr. Martin's Termination**

11       Shortly after Mr. Martin was released to full duty with no work restrictions, Mr. Waggoner began

12  to suspect that Mr. Martin had falsified his time records.  Mr. Waggoner reviewed daily manning reports

13  which showed time and dollar amounts of all sales of all employees and compared those reports to work

14  schedules provided by store managers.  Mr. Waggoner noticed inconsistencies between the time of Mr.

15  Martin's last sale and the time he was scheduled to leave that same day.  Mr. Waggoner reviewed Mr.

16  Martin's time records to see if Mr. Martin worked the schedule he had submitted.  Mr. Martin's time

17  records revealed that Mr. Martin frequently used his manual override to change his departure times

18  inconsistently with the times he worked.  Mr. Martin's time records further revealed that on several

19  occasions Mr. Martin's manually adjusted departure time did not coincide with the time of his last sale

20  and that there were great time periods where Mr. Martin's time records indicated he was at the store but

21  did not make a sale which Genesco considers "an aberration from normal sales patterns."

22       Mr. Waggoner compared Mr. Martin's time records and work schedules and noticed at least 10

23  occasions between January 30, 2005 and June 4, 2005 when Mr. Martin had left work several hours

24  before the time he was scheduled to depart or had not worked at all although Mr. Martin had not sought

25  Mr. Waggoner's necessary prior approval to deviate from his approved work schedule.  Based on this

26  information, Mr. Waggoner suspected that Mr. Martin falsified time entries.

27       By May 2005, Mr. Waggoner decided that Mr. Martin warranted termination based on his

28  declining sales, repeated failure to follow Genesco policies and suspected falsification of time entries.

1  Mr. Waggoner communicated with Lori Keys ("Ms. Keys") of Genesco's Human Resources Department

2  about whether to proceed with termination.  Ms. Keys concurred with Mr. Waggoner's decision to

3  terminate Mr. Martin, who was terminated effectively June 1, 2005.

#### Post-Termination Store Performance

5  Brian Redden ("Mr. Redden") assumed management of the Modesto store after Mr. Martin's

6  termination.  Under Mr. Redden, store sales increased more than $10,000 from the prior month.  Mr.

7  Redden's personal sales as store manager exceeded Mr. Martin's personal sales by 99 percent.  Mr.

8  Redden maintained his pace throughout 2005.  The four lowest sales performance months in 2005 were

9  the months Mr. Martin managed the Modesto store.

#### Mr. Martin's Claims

11  Mr. Martin proceeds on his original complaint to allege that after returning to work following

12  knee surgery, Mr. Martin "was subjected to various harassment and unjustified criticism by his

13  supervisor, including but not limited to unjust employment evaluations and performance reviews which

14  unfairly criticized plaintiff's overall work hours and work schedule."  Mr. Martin's complaint alleges

15  a discrimination in violation of FEHA[8] cause of action that Genesco's "discriminatory actions" against

16  Mr. Martin "constituted unlawful discrimination in employment" on account of Mr. Martin's disability.

17  Mr. Martin seeks to recover lost salary and benefits and for emotional and physical distress.

#### DISCUSSION

#### Summary Judgment Standards

20  F.R.Civ.P. 56(b) permits a party against whom relief is sought to seek "summary judgment on

21  all or part of the claim."  Summary judgment is appropriate when there exists no genuine issue as to any

22  material fact and the moving party is entitled to judgment as a matter of law.  F.R.Civ.P. 56(c);

23  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W.*

24  *Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of

25  summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a

26  genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union*

27

28  [8]  FEHA is the California Fair Employment and Housing Act, Cal. Gov. Code, §§ 12900, et seq. ("FEHA").

1    *of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9ᵗʰ Cir. 1985).

2        On summary judgment, a court must decide whether there is a "genuine issue as to any material

3 fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(c); *Covey v.*

4 *Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9ᵗʰ Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398

5 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct.

6 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9ᵗʰ Cir. 1984).

7 The evidence of the party opposing summary judgment is to be believed and all reasonable inferences

8 that may be drawn from the facts before the court must be drawn in favor of the opposing party.

9 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587,

10 106 S.Ct. 1348.  The inquiry is "whether the evidence presents a sufficient disagreement to require

11 submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

12 *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

13        To carry its burden of production on summary judgment, a moving party "must either produce

14 evidence negating an essential element of the nonmoving party's claim or defense or show that the

15 nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of

16 persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9ᵗʰ

17 Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9ᵗʰ Cir.

18 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

19 court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at 1102; *see High Tech*

20 *Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material.

21 Only disputes over facts that might affect the outcome of the suit under the governing law will properly

22 preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

23        "If a moving party fails to carry its initial burden of production, the nonmoving party has no

24 obligation to produce anything, even if the nonmoving party would have the ultimate burden of

25 persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

26 "If, however, a moving party carries its burden of production, the nonmoving party must produce

27 evidence to support its claim or defense."  *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

28 at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

1  fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

2  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of

3  summary judgment, after adequate time for discovery and upon motion, against a party who fails to make

4  the showing sufficient to establish the existence of an element essential to that party's case, and on

5  which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough

6  evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan*

7  *Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  "The amount of evidence

8  necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

9  parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting

10  *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere

11  existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*,

12  477 U.S. at 252, 106 S.Ct. 2505.

13       As discussed below, the Genesco demonstrates an absence of evidence to support Mr. Martin's

14  disability discrimination claim and Mr. Martin fails to demonstrate a factual issue to avoid summary

15  judgment.[9]

**FEHA Disability Discrimination**

17       Mr. Martin's remaining FEHA cause of action alleges Genesco unlawfully discriminated against

18  Mr. Martin based on his disability to violate California Government Code section 12940(a).  FEHA

19  declares "as a public policy of this state that it is necessary to protect and safeguard the right and

20  opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment

21  on account of . . . physical disability, mental disability, medical condition . . ." Cal. Gov. Code, § 12920.

22  California Government Code section 12940(a) provides it is unlawful: "For an employer, because of .

23  . . physical disability, mental disability, medical condition . . . to refuse to hire or employ the person .

24  . . or to bar or to discharge the person from employment . . . or to discriminate against the person in

25  compensation or in terms, conditions, or privileges of employment."

26  / / /

27

28       [9]  As Genesco notes, Mr. Martin does not dispute nearly two-thirds of Genesco's 88 undisputed material facts and raises no genuine dispute as Genesco's undisputed material facts which Mr. Martin attempts to challenge.

8

***Prima Facie Case***

Disparate treatment claims have shifting burdens of proof. A plaintiff has the initial burden to prove by a preponderance of evidence a prima facie case of disparate treatment, that is, a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *see St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746-2747 (1993). This may be accomplished with direct evidence of discriminatory intent. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). "'Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1988) (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)).

A plaintiff may also establish a prima facie case of disability discrimination through circumstantial evidence. To do so, the plaintiff must show that he/she:

      1.      Suffers from a disability;

      2.      Is a qualified individual; and

      3.      Was subjected to adverse employment action because of the disability.

*Faust v. California Portland Cement Co.*, 150 Cal.App.4th 864, 886, 58 Cal.Rptr.3d 729 (2007); *Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66 Cal.Rptr.2d 830, 835 (1997); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802; 93 S.Ct. 1817 (1973);*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785 (1988).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. At summary judgment, the "requisite degree proof necessary to establish a *prima facie* case . . . is minimal and does not even need to rise to the level of preponderance of the evidence." *Wallis*, 26 F.3d at 889.

If plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for adverse employment action. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 252-253, 101 S.Ct. at 1094-1095; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000), *cert. denied*, 533 U.S. 950, 121 S.Ct. 2592 (2001); *Guz*

1  *v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 355-356, 100 Cal.Rptr. at 379 (2000); *Brundage*, 57 Cal.App. 4th

2  at 228, 66 Cal.Rptr.2d at 835.  If the employer presents admissible evidence that one or more of

3  plaintiff's prima facie elements is lacking or that the adverse employment action was based on

4  legitimate, nondiscriminatory factors, the employer is entitled to summary judgment unless the plaintiff

5  produces admissible evidence to raise a triable issue of fact material as to the employer's showing.

6  *Caldwell v. Paramount Unified School District*, 41 Cal.App.4th 189, 203, 48 Cal.Rptr.2d 448, 457

7  (1995).  If the employer carries its burden, plaintiff must have an opportunity to prove by a

8  preponderance of evidence that the legitimate reasons offered by the employer were not its true reasons

9  but were a pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804; 93 S.Ct. 1817; *Burdine*,

10  450 U.S. at 253, 101 S.Ct. 1089; *see Brundage*, 57 Cal.App. 4th at 228, 66 Cal.Rptr.2d at 835.  "If a

11  plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated

12  motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to

13  be believed." *Washington v. Garrett*, 10 F.3d 1421, 1432-1433 (9th Cir. 1993).

14      Despite the burden shifting, the ultimate burden of proof remains always with the plaintiff to

15  show that the employer intentionally discriminated because of the plaintiff's disability. *See  Burdine*,

16  450 U.S. at 253, 101 S.Ct. 1089; *Coleman*, 232 F.3d at 1281; *Rose v. Wells Fargo & Co.*, 902 F.2d 1417,

17  1420-1421 (9th Cir. 1990).  By applying the shifting burdens of production in the summary judgment

18  context, "the judge [will] determine whether the litigants have created an issue of fact to be decided by

19  the jury." *Burdine*, 450 U.S. at 255, n. 8, 101 S.Ct. at 1094, n. 8.

20      With the shifting burdens in mind, this Court turns to Genesco's challenges to Mr. Martin's

21  prima facie case of disability discrimination.

22                                        ***Disability***

23      Genesco contends that Mr. Martin admitted that he was not disabled at his termination and that

24  the evidence shows he was not terminated because of alleged disability.  Genesco points to Mr. Martin's

25  deposition testimony that he considered himself disabled only during the May 2004 to January 18, 2005

26  period of work restrictions and that he did not consider himself disabled or perceived as disabled at his

27  termination.  Mr. Martin testified:

28      Q.      Mr. Martin, did you consider yourself to be disabled at the time of your

1          termination?

2                . . .

3          THE WITNESS: No. . . .

4                . . .

5          Q.      Okay.  Did you consider yourself to be perceived as disabled at the time of your
              termination?

6                . . .

7          THE WITNESS: No.  I was fully able to do my job and work the hours required.

8                . . .

9          Q.      At any time during your employment did you consider yourself to be disabled?

10               . . .

11         THE WITNESS: Yes.  From May 2004 to January 2005, when I was on disability.

12

13         Genesco points out that Mr. Waggoner decided to terminate Mr. Martin in May 2005 because

14   of Mr. Martin's post-January 2005 conduct, including suspected time record falsification, declining

15   sales, and failure to close the store and to work Sundays.[10]  Genesco notes that Mr. Martin's subject

16   conduct arose after he claims he was no longer disabled and that no evidence rebuts the absence of work

17   restrictions from January 2005 to Mr. Martin's termination.

18         Mr. Martin responds that he "was temporarily disabled for a number of weeks following surgery"

19   _____

20         [10]      In his declaration, Mr. Waggoner states:

21         In May 2005, I decided to terminate Martin's employment based upon his performance
     deficiencies and his repeated failures to abide by company policies and the directions and expectations I
22   had explicitly communicated to him.  Specifically, my decision to terminate Martin's employment was
     based upon the following: (a) my reasonable suspicion and belief that Martin was falsifying his time cards,
23   (b) Martin's poor personal and store sales performance, (c) Martin's repeated failure to abide by my
     instructions to provide schedules to me two weeks in advance, (d) Martin's repeated failure to work every
24   other Sunday, which was required of store managers, (e) Martin's repeated failure to work during closing
     of the store at least two nights each week with one of the nights being the busiest nights (either Friday or
25   Saturday), which was required of store managers, (f) Martin's failure to provide me with stock counts for
     his store, (g) Martin's repeated failure to schedule and require his full-time direct report employees to work
26   a minimum of 45 hours per week and 8 hours on Friday, Saturday and every other Sunday and to require
     his part-time direct report employees to see a minimum of $40 worth of merchandise per hour, and (h)
27   Martin's failure to teach his employees good selling techniques and enforce those techniques.

28

1  and that once released to return to work, he was entitled to FEHA protection from discrimination arising

2  from being regarded as "having had[] any physical condition that makes achievement of a major life

3  activity difficult." *See* Cal. Gov. Code, § 12926(k)(4). Mr. Martin further claims FEHA protection from

4  discrimination arising from being regarded as "having had[] a . . . condition . . . that has no present

5  disabling effect but may become a physical disability . . ." As such, Mr. Martin argues that there is a

6  factual issue whether Mr. Martin was regarded or perceived as disabled to arise to a FEHA violation.

7       Mr. Martin points to no meaningful evidence to support that he disabled after his January 19,

8  2005 return to work without restrictions. Mr. Martin relies on a passing comment in Dr. Berrien's April

9  11, 2005 report that Mr. Martin "has aggravation of his knee when he has to do repetitive kneeling,

10 crawling and squatting, as indicated in the past medical history." Nothing in Dr. Berrien's report

11 suggests a post-January 2005 disability, especially given that Mr. Martin's limited meniscus tear injury

12 was repaired with surgery and required limited future care. Dr. Berrien noted that Mr. Martin "has

13 returned, essentially, to his normal activities at this time." Mr. Martin admitted in his deposition that

14 at his termination he "was fully able to do my job and work the hours required."

15      Moreover, no evidence reveals that Genesco or Mr. Waggoner perceived Mr. Martin as having

16 an actual or potential physical disability. "The sole issue under the 'regarded as' definitional prong is

17 whether the employer believes an applicant or employee is physically disabled." *Gelfo v. Lockheed*

18 *Martin Corp.,* 140 Cal.App.4th 34, 52, 43 Cal.Rptr.3d 874 (2006). Mr. Martin admitted that he was not

19 perceived as disabled. Mr. Martin's testimony negates that he suffered or was perceived to suffer a

20 disability after his return to work. In his declaration, Mr. Waggoner states: "I did not know, consider

21 or perceive Martin to be disabled at the time of his termination." Mr. Martin fails to satisfy the disability

22 element of his prima facie case in the absence of evidence to raise a factual issue as to his actual or

23 perceived disability.

### *Qualified To Perform*

25      Genesco argues that Mr. Martin fails to satisfy the qualified to perform element of the disability

26 discrimination prima facie case in that his "history of performance problems and policy violations render

27 him unqualified for his job." A plaintiff satisfies the element if he/she is "qualified to perform the

28 essential functions of the job, with or without reasonable accommodations." *See Le Bourgeois v.*

1   *Fireplace Manufacturers, Inc.*, 68 Cal.App.4th 1049, 1058, n. 11, 80 Cal.Rptr.2d 660 (1998).  "[T]o

2   establish a prima facie case for discrimination based upon violation of the FEHA, the plaintiff must

3   prove he was qualified for the position."  *Quinn v. City of Los Angeles,* 84 Cal.App.4th 472, 480, 100

4   Cal.Rptr.2d 914 (2000).

5          To support Mr. Martin's lack of qualification, Genesco points to Mr. Martin's "abysmal"

6   personal and store sales, repeated counseling, history of failure to comply with Genesco policies, failure

7   to obtain needed authority to transfer merchandise to another store, failed store inventory audit, failure

8   to work every other Sunday and to close the store on Friday or Saturday and another night of every week,

9   and Mr. Waggoner's reasonable suspicion that Mr. Martin falsified time records.

10          Mr. Martin responds that there is no "legitimate" dispute that he was able physically to perform

11   his job up to termination.  Mr. Martin notes the absence of evidence that he "was not completing the

12   essential job functions."  Mr. Martin attempts to create a factual issue as to "essential job functions" in

13   that his written job description does not reference duties and matters for which Mr. Waggoner found him

14   deficient.

15          The parties appear to lose sight of the qualified prima facie case element.  Genesco focuses on

16   Mr. Martin's performance deficiencies to conclude he was unqualified.  Mr. Martin focuses on his job

17   description to mitigate his purported deficiencies.  The parties' points are immaterial in that in the

18   absence of a disability, Mr. Martin was presumably qualified to perform his position, with or without

19   reasonable accommodation.

20                               ***Adverse Employment Action***

21          Mr. Martin claims that he "suffered a series of adverse employment action" leading to his

22   termination.  Mr. Martin points to harassment and discipline for insufficient hours "due to his disability,"

23   Mr. Waggoner's "work you like a dog comment,"[11] a "final warning" after Mr. Martin's restrictions were

24   lifted in January 2005, and Mr. Waggoner's post-return to work pestering and subjecting Mr. Martin to

25   procedures which "differed with the written procedures set out by Genesco."

26          Inquiry whether employment action is adverse requires a case-by-case determination based upon

27

28   [11]      Mr. Martin attributes to Mr. Waggoner a one-time September 2004 comment that when Mr. Martin got off
     disability, Mr. Waggoner was going to work him "like a dog."

1  objective evidence. *Blackie v. State of Maine*, 75 F.3d 716, 725 (1ˢᵗ Cir. 1996). Adverse employment

2  action requires "a materially adverse change" in employment terms. *Kocsis v. Multi-Care Management,*

3  *Inc.*, 97 F.3d 876, 885 (6ᵗʰ Cir. 1996). A "tangible employment action in most cases inflicts direct

4  economic harm." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762, 118 S.Ct. 2257 (1998). "A

5  tangible employment action constitutes a significant change in employment status, such as hiring, firing,

6  failing to promote, reassignment with significantly different responsibilities, or a decision causing a

7  significant change in benefits." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Kohler v. Inter-Tel*

8  *Technologies*, 244 F.3d 1167, 1179 (9ᵗʰ Cir. 2001).

9         A plaintiff's displeasure "by an employer's act or omission does not elevate that act or omission

10  to the level of a materially adverse employment action." *Blackie*, 75 F.3d at 725. To qualify as adverse,

11  the action must be "more disruptive than a mere inconvenience or alteration of job responsibilities. A

12  materially adverse change might be indicated by a termination of employment, a demotion evidenced

13  by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

14  diminished material responsibilities, or other indices that might be unique to a particular situation."

15  *Crady v. Liberty Nat. Bank and Trust Co.*, 993 F.2d 132, 136 (7ᵗʰ Cir. 1993).

16         The only "adverse" action at issue is Mr. Martin's termination, which as demonstrated above was

17  not based on Mr. Martin's actual or perceived disability. The other matters raised by Mr. Martin are not

18  adverse in that they did not materially change employment terms rising to the level of termination,

19  demotion or reassignment. Genesco notes that Mr. Martin "mischaracterizes" a January 28, 2005

20  Personal Progress and Performance Review as a "final warning" in that Mr. Waggoner changed the

21  review classification to "counseling" after Mr. Martin explained that he had worked reduced hours

22  pursuant to his physician's restrictions. There is no showing that events of which Mr. Martin complains

23  were based on his actual or perceived disability. In the absence of Mr. Martin's protected disability and

24  in turn termination based on such disability, Mr. Martin fails to satisfy the adverse action element of his

25  prima facie case or to raise a necessary factual issue as to it.

26                                     ***Legitimate, Nondiscriminatory Reason***

27         Genesco contends that despite Mr. Martin's failure to establish a prima facie disability

28  discrimination case, Genesco acted on legitimate, nondiscriminatory reasons to terminate Mr. Martin.

1    Again, Genesco points to reasons unrelated to disability, including Mr. Waggoner's reasonable suspicion

2    that Mr. Martin falsified time records, Mr. Martin's poor personal and store sales, repeated failure to

3    provide Mr. Waggoner staffing schedules two weeks in advance, repeated failure to work required

4    personal hours, failure to provide Mr. Waggoner with stock counts, repeated failure to work required

5    hours and days, failure to require part-time employees to sell a minimum of $40 per hour, and failure

6    to teach his employees and to enforce good selling techniques.  Genesco contends that Mr. Waggoner's

7    termination decision was based on poor performance and misconduct which began far before Mr.

8    Martin's report of alleged injury/disability and which continued after Mr. Martin was cleared to work

9    by his personal physician and the workers compensation Qualified Medical Examiner.  Genesco argues

10   that an intent to discriminate against Mr. Martin is vitiated by Mr. Waggoner's consultation with and

11   seeking approval of Genesco's human resources department regarding termination.  Moreover, Genesco

12   points to Mr. Martin's deposition testimony that his work restrictions did not prevent him timely to turn

13   in his schedules, to meet personal and store sales goals, and to close the store two nights per week,

14   including either a Friday or Saturday.

15        Mr. Martin does not challenge the merits of Genesco's termination grounds, except to contend

16   that some of them, as discussed below, are a pretext for disability discrimination.  Genesco has

17   articulated legitimate, non-discriminatory reasons to terminate Mr. Martin.  As such, this Court turns

18   to Mr. Martin's claims of pretext.

19                                              ***Pretext***

20        Genesco argues that Mr. Martin is unable to proffer evidence that the stated reasons for his

21   termination were pretextual given Mr. Martin's poor performance and multiple warnings.  Mr. Martin

22   responds that there is "direct evidence" that Genesco's actions were discriminatory and that there is

23   "circumstantial and indirect evidence which strongly suggests" that Genesco's termination reasons are

24   pretextual.  In its reply papers, Genesco notes that Mr. Martin does not present evidence that Genesco's

25   termination reasons were false or dishonest but relies on a combined effect that the "reasons were not

26   sufficiently egregious to warrant termination."

27        A plaintiff may establish pretext "either directly by persuading the court that a discriminatory

28   reason more likely motivated the employer or indirectly by showing that the employer's proffered

                                                  15

1  explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.  "[A] plaintiff at the

2  pretext stage must produce evidence in addition to that which was sufficient for her prima facie case in

3  order to rebut the defendant's showing." *Godwin*, 150 F.3d at 1220; *see Wallis*, 26 F.3d at 890.  "When

4  the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation

5  of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221.

6       In the absence of direct evidence, "the plaintiff must come forward with circumstantial evidence

7  that tends to show that the employer's proffered motives were not the actual motives because they are

8  inconsistent or otherwise not believable." *Godwin*, 150 F.3d at 1222.   The Ninth Circuit Court of

9  Appeals has explained:

10      In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must
        produce "specific, substantial evidence of pretext." *Steckl v. Motorola, Inc.*, 703 F.2d
11      392, 393 (9th Cir. 1983).  In other words, the plaintiff "must tender a genuine issue of
        material fact as to pretext in order to avoid summary judgment." *Id.*

12

13  *Wallis*, 26 F.3d at 890-891 (addressing age discrimination).[12]

14       A plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies,

15  or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder

16  could rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not

17  act for the [asserted] non-discriminatory reasons.' [citations.]" *Fuentes v. Perksie*, 32 F.3d 759, 765 (3rd

18  Cir. 1994); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1072 (3rd Cir. 1996), *cert.*

19  *denied*, 521 U.S. 1129, 117 S.Ct. 2532 (1997); *Stewart v. Rutgers, The State University*, 120 F.3d 426

20  (3rd Cir. 1997).  "If a plaintiff succeeds in raising a genuine factual issue regarding the authenticity of

21  the employer's stated motive, summary judgment is inappropriate because it is for the trier of fact to

22  decide which story is to be believed." *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993).  A

23  "disparate treatment plaintiff can survive summary judgment without producing any evidence of

24  discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of

25

26  _____
        [12]       California courts have held that to avoid summary judgment, a plaintiff must offer substantial evidence that
    the employer's stated non-discriminatory reason for the adverse action was untrue or pretextual, or that the employer acted
27  with a discriminatory animus, or combination of the two, such that a reasonable trier of fact could conclude the employer
    engaged in intentional discrimination.  *Guz*, 24 Cal.4th at 357, 100 Cal.Rptr.2d 353; *Hersant v. Department of Social
    Services*, 57 Cal.App.4th 997, 1004, 67 Cal.Rptr.2d 483 (1997).
28

1  material fact regarding the truth of the employer's proffered reasons." *Chuang v. Univ. of Cal., Davis,*

2  *Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000).  A factual issue can be created only by "a conflict

3  of evidence," not "by speculation or conjecture." *Horn v. Cushman & Wakefield Western, Inc.*, 72

4  Cal.App.4th 798, 807, 85 Cal.Rptr.2d 459 (1999).

5  However, a plaintiff is unable to avoid summary judgment "merely by denying the credibility

6  of the defendant's proffered reason for the challenged employment action." *Cornwell v. Electra Central*

7  *Credit Union*, 439 F.3d 1018, 1028-1029, n. 6 (9th Cir. 2006).  A plaintiff is unable to create "a genuine

8  issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment

9  action was unnecessary or unwarranted." *Cornwell*, 439 F.3d at 1029, n. 6.

10  Genesco notes Mr. Martin's reliance on Mr. Waggoner's alleged comments touching on Mr.

11  Martin's knee injury.  Mr. Martin attributes to Mr. Waggoner a one-time September 2004 comment that

12  when Mr. Martin got off disability, Mr. Waggoner was going to work him "like a dog."  Mr. Martin

13  further attributes to Mr. Waggoner comments on three occasions in April, June and July 2004 that if Mr.

14  Martin were a basketball player, he would be back to work "with that injury and fully recovered in two

15  weeks."

16  Genesco argues that Mr. Waggoner's alleged "isolated" comments are equivocal, or at worst

17  "awkward, insensitive or ungenerous," but "not direct evidence of discrimination."  Genesco notes that

18  Mr. Waggoner's alleged comments were "remote in time from the termination decision" and not related

19  to Mr. Waggoner's grounds to terminate Mr. Martin.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228,

20  277, 109 S.Ct. 1775 (1989) (decisionmakers' statements unrelated to the decisional process do not

21  satisfy the plaintiff's burden); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (supervisor's

22  comment that "we don't necessarily like grey hair" did not support inference of discriminatory motive

23  and was not tied directly to plaintiff's termination).

24  Genesco further points to Mr. Martin's deposition testimony that at the time of Mr. Waggoner's

25  alleged comments, Mr. Waggoner believed based on information from Mr. Martin that Mr. Martin's

26  knee meniscus "was only cracked in a few places."  Mr. Martin acknowledged that after he had

27  explained the degree of his knee injury to Mr. Waggoner, Mr. Waggoner "got off that," that is,

28  comments about returning to work sooner.  Genesco notes that Mr. Martin never complained about the

1 alleged comments or alleged discrimination.

2       To attempt to raise an issue of pretext, Mr. Martin points to Mr. Waggoner's January 28, 2005

3 Personal Progress and Performance Review regarding Mr. Martin's failure to work 45 hours a week,

4 every other Sunday, and closing two nights per week, one of which either Friday or Saturday.  Mr.

5 Martin appears to argue that the warning supports "sufficient nexus between plaintiff's disability, and

6 the adverse actions taken in response to such disability."  Mr. Martin further attempts to dispute whether

7 there were clear Genesco policies to require Mr. Martin to work 45 hours per week and to provide his

8 store work schedules as far in advance as Genesco claims.  Mr. Martin characterizes Mr. Waggoner as

9 "hypercritical of marginal job duties" to reflect that Mr. Martin was punished for taking time off and

10 working diminished hours.

11       Despite Mr. Martin's claim, the record reflects no direct evidence that Genesco was motivated

12 to terminate Mr. Martin based on his recovered knee injury, especially considering the multiple

13 legitimate, non-discriminatory grounds Genesco articulates for its termination decision.  "It must be

14 recognized that it is not merely the falsity or incorrectness of the articulated reason that gives rise to the

15 conclusion of pretext. Rather, it is the resulting absence of legitimate explanation for the suspect

16 employment decision that warrants the finding of discrimination."  *Sims v. Cleland*, 813 F.2d 790, 793

17 (6th Cir.1987).  The January 28, 2005 Personal Progress and Performance Review is not direct evidence

18 of discrimination in the absence of reference to alleged disability or discriminatory bias.

19       In addition, there is an absence of circumstantial evidence that Genesco's stated termination

20 grounds were a pretext.  Mr. Martin offers nothing to suggest the grounds are inconsistent or

21 unbelievable.  Mr. Martin offers no specific, substantial evidence of pretext to raise a factual dispute

22 given the lack of connection to his fully healed knee injury which he admits did not hinder his

23 performance after his full release.  Any doubts arising from Mr. Martin's policies claims address matters

24 unrelated to alleged disability discrimination and fail to substantiate a suspect employment decision.

25 Mr. Waggoner's comments, although lacking sensitivity, fail to establish discriminatory intent or pretext.

26 Mr. Martin has failed to carry his burdens to raise factual issues as to discrimination or pretext.

27 **CONCLUSION AND ORDER**

28       For the reasons discussed above, this Court:

18

1.    GRANTS Genesco summary judgment on all claims which Mr. Martin raised in this action; and

2.    DIRECTS the clerk to enter judgment in favor of defendant Genesco, Inc. and against plaintiff James Martin and to close this action.

IT IS SO ORDERED.

**Dated:**   **November 5, 2008**                  **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE